[Civ. No. 46979. Second Dist., Div. One. July 27, 1976.]

RICHARD W. EASTWOOD, Plaintiff and Respondent, v.
KENT FROEHLICH, as Executor, etc., Defendant and Appellant.

**COUNSEL**

Harold I. Gould for Defendant and Appellant.

Harris & Aranda and Terry A. Marcellus for Plaintiff and Respondent.

**OPINION**

**HANSON, J.—**

### INTRODUCTION

Following a nonjury trial on plaintiff-respondent Richard W. Eastwood's (hereinafter plaintiff) five-count complaint, the trial court

ruled in favor of defendant-appellant Kent Froehlich, as executor under the will of Bruce E. Lewis, deceased, upon all counts except the fourth. This fourth count sought recovery for violation of the California Franchise Investment Law. (Corp. Code, § 31000 et seq.) The trial court gave judgment in favor of plaintiff as to the fourth count based on liability of defendant executor's decedent Lewis under section 31302 of the Corporations Code since Lewis was president of Juvene Products, Inc., the corporation which sold plaintiff a franchise without compliance with the provisions of the Franchise Investment Law.

Defendant executor appeals from the judgment. He also appeals from the orders made January 8, 1975, and January 20, 1975, denying his motions for a continuance or, alternatively, to have the trial placed off calendar. No appeal lies from these orders although they are reviewable on the appeal from the judgment.

## The Facts

The deceased Bruce E. Lewis was a director and president of Juvene Products, Inc., a Nevada corporation, doing business in California, and E. A. Henriques was a director and secretary of the corporation. About August 21, 1972, plaintiff Eastwood and the corporation (by Henriques) entered into a written agreement, entitled "Exclusive Wholesale Distributor Agreement." The court below found (1) that the "Exclusive Wholesale Distributor Agreement" was a "franchise" as that term is used and defined in section 31005 of the Corporations Code (a finding which is not questioned upon appeal); (2) that the offer of the franchise to plaintiff was never registered or exempted therefrom under the provisions of the Franchise Investment Law; and (3) that the franchise was offered and sold to plaintiff for the sum of $7,232.40.

Lewis was a shareholder, director and the president of Juvene Products, Inc., a small corporation of few stockholders operating out of a single location in Santa Monica, California, where plaintiff Eastwood met Lewis on two occasions after entering into the agreement. There was evidence of checks made by plaintiff Eastwood payable to the corporation on three different dates, these being for $3,690, $3,542.40 and $2,000, respectively. It is reasonable to infer that the president of this small corporation knew or was aware of the receipt of these checks by the corporation and of the purpose for which they were made by or secured from plaintiff.

On September 5, 1973, since Eastwood received none of the items (apparently forms of cosmetics, creams, etc.) from the corporation for which he had paid as part of the transaction, he filed his complaint against defendants Juvene Products, Inc., the corporation, E. A. Henriques and Bruce Lewis, in addition to others.

On December 11, 1973, an answer was filed on behalf of the three defendants.

On January 7, 1974, defendant Lewis died.

On July 22, 1974, Kent Froehlich qualified as executor of Lewis's will.

On December 3, 1974, plaintiff filed his creditor's claim and since no action was taken thereon by the executor of the estate, he moved for an order substituting the executor as defendant, the declaration being dated December 31, 1974. By ex parte order, the court ordered that the executor be substituted as defendant in the action but struck from the order (apparently as proposed by plaintiff's counsel) a 30-day period from January 2, 1975, the date of the order, within which defendant-executor could file a supplemental answer.

On January 2, 1975, service by mail of the substitution order (and supporting papers) was made on the former counsel for Lewis and on the attorney for the executor in the estate proceedings.

On January 8, 1975, a mandatory settlement conference was held, attended by counsel for the executor as well as other counsel. Counsel for defendants corporation and Henriques stipulated to judgment in plaintiff's favor against these two defendants. Plaintiff's counsel offered to stipulate that the action as against Lewis or his executor be dismissed without prejudice on condition that there be a waiver of all statutes of limitations by the estate, a condition which the executor's counsel felt he had no authority to do without the consent and permission of the probate court. Consequently, no such stipulation was had. The record of the January 8, 1975, settlement conference fails to show any motion by counsel for defendant-executor seeking a continuance or the placement off calendar of the matter. The oral proceedings of that date do show that defendant-executor's counsel asked for the office copies of the file (including interrogatories and answers thereto) of counsel who had answered for the three defendants (including decedent Lewis), and it was agreed he was to have all of the file except such letters (if any) which did

not concern decedent Lewis. There is no claim that this agreement was not complied with by counsel.

On January 20, 1975, the cause was called in the master calendar department at which time counsel for defendant-executor moved for a continuance or that the cause be placed off calendar since the executor had had notice of his substitution as a party only 18 days earlier. Counsel also stated he had made a like motion at the mandatory settlement conference which motion had been denied (a statement not questioned by plaintiff's counsel). Counsel for plaintiff explained to the court that the executor would be unable to testify in the case as he was not a party to and knew nothing about the facts other than the allegations of the pleadings; that Bruce Lewis was deceased; that the "other" man, Mr. Henriques, was over 80 years of age, had suffered a stroke, and could not testify—as a result of which no prejudice would be suffered by a denial of any continuance. In answer to the court's inquiry: "Wherein would there be prejudice?" counsel for the executor responded: "I think it might be advisable for the executor to engage in some discovery. That's about it. The executor has not." After further discussion, the motion was denied and the matter was assigned to another department for trial.

When the matter was called in the trial department, counsel for the executor renewed his motion,[1] counsel for plaintiff resisted and made explanation to show that no prejudice would result from the claimed want of discovery by the executor.[2] The motion was denied.

[1]Counsel stated: "If the Court please, in order that my client will not be prejudiced, I wanted to remake a motion for a continuance of this case on the ground that my client, the executor, has been in the case for only 18 days prior to today's date. The motion was first made at the mandatory settlement conference, again made this morning in the master calendar department and in both instances denied. [¶] The basis for the motion is that the executor, the now defendant, would be denied due process of law if he is forced to go to trial on this case at this time because of the very shortness of time that he personally has been involved. The deceased defendant, Bruce Lewis, was involved in this case only approximately one month prior to his death, and the executor, according to the record, 18 days, and the executor has not had the opportunity to engage in any discovery in the 14 days, which is the amount of time that he has had actual notice of the matter."

[2]Among other things, plaintiff's counsel stated: "Discovery is in this case particularly not appropriate and I don't believe that the executor can claim any prejudice in not having a discovery because the questions of alter ego and franchise are going to be determined entirely on what transpired in 1972. All the documents are in the hands of the executor. I have let counsel look through the exhibits that I propose to offer here and I believe he will agree with me that all of them are 1972 documents. We have simply a question of law here on alter ego and on the franchise law as to whether this was or was not a franchise, and I don't see that discovery would aid one iota in this case. [¶] On the question of depositions, Mr. Lewis is, of course, deceased, and the only other officer has

Based on the evidence hereinbefore summarized, the trial court found in Findings 10 and 11 as follows:

"(10) That at all times mentioned herein, defendant BRUCE LEWIS was a director and the president of defendant JUVENE' PRODUCTS, INC. and as such was a principal executive officer of a corporation liable under Section 31300 of the Corporations Code, that said defendant BRUCE LEWIS had knowledge of or reasonable grounds to believe in the existence of facts by reason of which the liability exists under Section 31300 of the Corporations Code, and is a person liable jointly and severally with and to the same extent as defendant JUVENE' PRODUCTS, INC. within the meaning of Section 31302 of the Corporations Code;

"(11) That such individual liability of defendant BRUCE LEWIS survives his death pursuant to Section 31305 of the Corporations Code and his estate is liable therefor; . . ."

## ISSUES

On appeal defendant-executor contends (1) that the trial court committed reversible error in denying his motions for continuance of the trial or, alternatively, to have the matter placed off calendar; and (2) that there was no evidence to support a finding that decedent Lewis had knowledge of or reasonable grounds to believe in the existence of the illegal franchise agreement.

## DISCUSSION

### I

### THE MOTIONS FOR CONTINUANCE

█ The record reflects that at no time before the trial court did defendant-executor show how or wherein any prejudice was or would be suffered by the lower court's refusal to grant a continuance of trial or to place the cause off calendar. The only suggestion found in the record was that the executor might want to engage in discovery without a showing that discovery would have been of any aid whatsoever to defendant.

---

suffered a stroke, is approximately 80 years of age, Henriques, and is not capable of giving answers, and, indeed, the answers filed on behalf of Mr. Henriques so reflect, so I can't understand why discovery would be important in this case."

Further, no motion for a new trial was made at which defendant could have advanced the claim with such additional support as might have been obtained in the interval between trial and the making of such a motion.

Moreover, on appeal defendant advances nothing to show any prejudice.

Therefore, the point advanced on appeal seems to be predicated on an assumption that prejudice is to be assumed in the case at bench. Neither error nor prejudice is presumed. Here, defendant is required to show that there was an abuse of discretion on the part of the trial court which resulted in prejudice. (See, e.g., Cal. Const., art. VI, § 13.) In *People* ex rel. *Dept. Pub. Wks.* v. *Busick* (1968) 259 Cal.App.2d 744, 749 [66 Cal.Rptr. 532], the contention was made that the trial court abused its discretion in denial of appellants' motion for a continuance. It was held: "But all such motions are addressed to the sound discretion of the court, and a legion of cases repeat the rule that the trial court's decision will not be reversed on appeal except upon a clear showing of an abuse of discretion. [Citation.]" (See also *Cade* v. *Mid-City Hosp. Corp.* (1975) 45 Cal.App.3d 589, 600 [119 Cal.Rptr. 571].)

Accordingly, under the particular and peculiar circumstances of the case at bench we hold that defendant has not met the burden which rests upon him to support this contention. It, therefore, is rejected.

II

THE CLAIMED INSUFFICIENCY OF THE EVIDENCE

■ Corporations Code section 31300 imposes liability for damages upon any person (broadly defined by § 31015) who offers or sells a franchise in violation of section 31110 (among other sections). Section 31110 makes unlawful the offer or sale of any franchise in this state unless it has been registered or exempted from registration. The record at bench shows without dispute that the offer or sale of the franchise was in violation of section 31110 in that there had been no registration and there was no exemption from registration. Liability under section 31300 thus existed on the part of the corporation as a person who offered or sold the franchise to plaintiff.

The liability of decedent Lewis, a director and president of the corporation, rests upon section 31302 which provides: "Every person who directly or indirectly controls a person liable under Section 31300 or 31301, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

While this language is somewhat difficult to comprehend at first reading, that language (although mainly lifted from § 25504 of the Corp. Code) apparently is patterned after the more clear provisions of title 15 United States Code section 77o, and becomes clarified when the latter is considered.[3] Since the word "person" includes (among other things) a corporation (Corp. Code, § 31015), the corporation Juvene Products violated section 31110 and is liable by reason of section 31300. Under the language of section 31302, it appears that "every principal executive officer or director [decedent Lewis] of a corporation so liable [Juvene] . . . [is] also liable jointly and severally and to the same extent as such person [corporation Juvene], unless the other person [decedent Lewis] who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

Therefore, Lewis, as principal executive officer or director of the corporation, was liable to the same extent as the corporation under section 31302 *unless* Lewis had no knowledge of or reasonable grounds to believe in the existence of the agreements offering and selling the franchise to plaintiff Eastwood. Admittedly, there is very little evidence

---

[3]Section 77o of title 15 United States Code provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

on the matter of decedent's knowledge of or reasonable grounds to believe in the existence thereof. It was a matter quite within his mind and ended with his death. It would take but little showing or evidence by plaintiff Eastwood to support affirmatively these matters in relation to decedent Lewis. While it is believed there was sufficient showing and evidence in this regard to present at the very least a question of fact determinable as such by the trier of fact, it is not necessary to rely thereon.

Defendant-executor claims that the record fails to support a finding that decedent Lewis had knowledge of or reasonable grounds to believe in the existence of the agreement regarding the franchise between plaintiff Eastwood and the corporation Juvene. On the other hand, it cannot be said that the evidence as a matter of law establishes that Lewis had no such knowledge. Since the latter is an exception or exemption to the liability imposed on corporate officers and directors, such as decedent Lewis, the burden of proof rested upon defendant-executor seeking to invoke such exception or exemption. Here, absent proof sufficient to sustain this burden, the trial court properly determined the matter adversely to defendant.

In *Safeway Portland Emp. Fed. Cr. Un.* v. *Wagner & Co., Inc.* (9th Cir. 1974) 501 F.2d 1120, 1124, a like problem was presented under title 15 United States Code section 77*o*, quoted *supra* in footnote 3. It was held: "The Act imposes liability on persons who make use of the mails to sell an unregistered security, and also on those who control them. Both Ann C. Wagner and Doherty were controlling persons. [¶] The Act exempts controlling persons who '. . . had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.' Those claiming the exemption have the burden of proving it. Neither offered any proof and they were not justified in resting on the mere denials of their pleadings. [Omitting footnotes.]" (See also *Hogan* v. *Miller* (1957) 153 Cal.App.2d 107, 114 [314 P.2d 230], citing *Wilson* v. *Ray* (1950) 100 Cal.App.2d 299, 303-304 [223 P.2d 313]; *Pennaluna & Company* v. *Securities and Exchange Com'n* (9th Cir. 1969) 410 F.2d 861, 865, (1970) cert. den., 396 U.S. 1007 [24 L.Ed.2d 499, 90 S.Ct. 562].)

Accordingly, we hold the court's finding in favor of plaintiff as to count four was proper in all respects.

## DISPOSITION

The purported appeal from the orders of January 8, 1975, and January 20, 1975, is dismissed; the judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.